[Cite as *State v. Powlette*, 2020-Ohio-5212.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28513 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-2241 |
| | : | |
| DARREN M. POWLETTE | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 6th day of November, 2020.

. . . . . . . . . . .

CHRISTINE M. BURK, Atty. Reg. No. 0050559, City of Miamisburg Prosecutor's Office, 10 North First Street, Miamisburg, Ohio 45342
    Attorney for Plaintiff-Appellee

KENT J. DEPOORTER, Atty. Reg. No. 0058487, 7501 Paragon Road, Dayton, Ohio 45459
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Darren M. Powlette appeals from his minor-misdemeanor conviction on a complaint alleging that he "advertise[d] and operate[d] a bed and breakfast" without a conditional-use permit.

{¶ 2} Powlette advances five assignments of error. First, he contends the trial court erred in allowing the prosecutor to amend the complaint to include offense dates past the date that was sworn to in the complaint. Second, he claims the trial court denied him due process and a speedy trial by dismissing the original complaint, not providing adequate notice of a new violation, and refiling the complaint. Third, he argues that Sections 801 and 803 of Miami Township Zoning Resolution Article 8 are vague and violate due process as applied to him. Fourth, he asserts that the trial court's finding that he operated a bed and breakfast was against the manifest weight of the evidence. Fifth, he maintains that the trial court abused its discretion by finding that Miami Township could regulate his having a bed and breakfast because his activity was agritourism not subject to local regulation. The State has not filed a brief although given ample opportunity.

{¶ 3} The present dispute began when Miami Township zoning inspector Alex Carlson sent Powlette a March 21, 2018 "Notice of Violation." The notice advised Powlette that he was violating Miami Township Zoning Resolution Article 8, Section 801 by using his property at 7757 Upper Miamisburg Road as a "bed and breakfast." The notice further advised him to resolve the matter by (1) appealing to the Board of Zoning Appeals ("BZA"), (2) applying for a conditional-use certificate to use his property as a bed and breakfast, or (3) ceasing operation as a bed and breakfast.

{¶ 4} A criminal complaint subsequently was filed against Powlette on May 1,

2018. The misdemeanor complaint, which was sworn to by Carlson, alleged that beginning on April 19, 2018 and continuing through the date of the affidavit Powlette did unlawfully "advertise and operate a bed and breakfast without conditional use certification at 7757 Upper Miamisburg Road[.]"[1] The matter proceeded to a November 26, 2018 hearing in Miamisburg Municipal Court. The prosecutor asked the trial court to "conditionally dismiss" the complaint without prejudice. The prosecutor's conditions were that within 10 days Powlette was to cease advertising for a bed and breakfast. He also was not to operate a bed and breakfast on the property without a conditional-use certificate. (November 26, 2018 Tr. at 3, 8.) At the conclusion of the hearing, the trial court dismissed the complaint without prejudice "on the condition the defendant remove all public notice, that is web site, Facebook, et cetera, of conducting a bed and breakfast operation on the subject property and that compliance with the foregoing occur within ten days[.]" (*Id.* at 12.)

{¶ 5} Thereafter, on December 7, 2018, a new criminal complaint was filed against Powlette. Like the prior complaint, it was sworn to by Carlson. It alleged that between the dates of March 21, 2018 and December 7, 2018 Powlette did unlawfully "advertise and operate a bed and breakfast at 7757 Upper Miamisburg Road[.]" Accompanying the complaint was a copy of the same March 21, 2018 Notice of Violation that had been sent to Powlette prior to the filing of the original complaint.

{¶ 6} The refiled case proceeded to a May 31, 2019 bench trial in Miamisburg Municipal Court. After some initial confusion, the trial court made clear that the parties

---

[1] Curiously, the date of Carlson's affidavit was March 19, 2018. So the affidavit alleged that Powlette's violation began on April 19th and continued *backward* in time through March 19th. The dismissal of that complaint makes this irregularity irrelevant.

were before it solely on the refiled case, Miamisburg M.C. No. 18 CRB 2241, and not the prior case that conditionally had been dismissed, Miamisburg M.C. No. 18 CRB 786. (May 31, 2019 Tr. at 26-27, 36-37.) Before hearing testimony, the trial court also rejected a request by the prosecutor to amend the end date in the complaint from December 7, 2018 to January 16, 2019. (*Id.* at 22-23.) Despite that ruling, the trial court stated that it would allow the prosecutor to present evidence about guests staying at Powlette's property between December 7, 2018 and January 16, 2019. (*Id.* a 23.) Finally, the trial court rejected an argument by Powlette that the refiled case had not been properly commenced because he had not received a new Notice of Violation with a corresponding time to cure the alleged violation before criminal proceedings were pursued. (*Id.* at 17-18, 32-34, 37.)

**{¶ 7}** The trial court then heard testimony from four witnesses, two for the prosecution and two for the defense. The first prosecution witness was Kristen Lipscomb Sund, who had stayed at Powlette's property from December 30, 2018 to January 1, 2019. The second prosecution witness was zoning inspector Carlson. The defense witnesses were Kelly McCracken, who developed and maintained Powlette's websites, and Powlette himself. At the conclusion of the State's case, the prosecutor moved to amend the complaint to indicate that Powlette's offense had occurred between April 12, 2018 and January 16, 2019. (*Id.* at 212-213.) Over Powlette's objection, the trial court allowed amendment of the dates. (*Id.* at 214-218.)

**{¶ 8}** In its July 24, 2019 decision finding Powlette guilty, the trial court summarized the testimony of the four witnesses as follows:

> * * * Ms. Sund testified that she rented housing from the Defendant

from December 30, 2018 to January 1, 2019. During that time, she stayed in the "farmhouse" located on the property along with twelve (12) of her family members. She booked the reservation using the Air B&B app on her mobile phone. No other guests, who were not members of her own party, entered the "farmhouse" while they stayed there, including the Defendant. Ms. Sund only met the Defendant, Darren Powlette, one time, when he let her into the "farmhouse" upon her arrival there. They brought their own food and prepared it themselves. The children in her party played in the barn, and fed alpacas and chickens. Ms. Sund said she felt as if she were "staying on a farm" while she was there.

The State also presented the testimony of Alex Carlson, a Miami Township employee, who conducts code enforcement inspections of commercial properties, and also serves as a zoning code enforcement officer. Mr. Carlson stated that the Defendant's property is zoned for agricultural use only. Mr. Carlson investigated the Defendant's property by visiting the Stoney Hill Farm Facebook page and the Stoney Hill Farm website, where he observed bed and breakfast advertising.

The Defendant presented the testimony of Kelly McCracken, a friend of the Defendant who created and manages the Stoney Hill Farm website. Ms. McCracken testified that she has changed the name of the website three (3) times at the Defendant's request. When she created the website for the Defendant in December 2016, the website was named "Stoney Hill Rustic Weddings." In December 2017, she changed the website name to

"Stoney Hill Bed and Breakfast." Then in August 2018, she changed the name again to "Stoney Hill Farm," and removed all references on the webpages to a "bed and breakfast." Ms. McCracken stated that on November 26, 2018, she changed the website's URL address from "www.stoneyhillbedandbreakfast.com" to "www.stoneyhill.farm."

The Defendant also testified on his own behalf. Mr. Powlette stated that he never operated a bed and breakfast on the property, and he never served any food on the property. Mr. Powlette does not live in the "farmhouse" that he rents to guests. He stated that guests may rent the entire "farmhouse," but not individual rooms, and he does not provide any food to these guests. Mr. Powlette described the property as a "working grain farm" that produces hay. He also raises chickens, turkeys, and a herd of alpacas (which consists of three [3] alpacas). Mr. Powlette stated that he offers hayrides and tours of the property, and allows guests to the property to collect their own chicken eggs. He also sells the chicken eggs to family and friends.

Further, Mr. Powlette is a licensed "farmer" through the State of Ohio. Mr. Powlette stated that he advertises his property for short-term vacation rentals through the VRBO website and Air B&B website, along with about thirty (30) other websites that were included in the advertising package he purchased online through a service provider for vacation rentals.

(*Id.* at 3-4.)

{¶ 9} After summarizing the testimony presented, the trial court turned to the

parties' arguments. It first rejected Powlette's assertion that he did not operate a "bed and breakfast." In finding this argument to be unpersuasive, the trial court reasoned:

> At trial the Defendant argued that he was not operating a bed and breakfast, but instead he was merely renting his property as a short-term vacation rental, which is not prohibited in the zoning resolution. The Defendant argued that a short-term vacation rental is different from a "bed and breakfast," because at a "bed and breakfast" the property owner serves breakfast to the guests, and in comparison, the property owner does not serve breakfast at a short-term vacation rental. The Defendant testified that he did not serve any food to the guests who rented the "farmhouse."

> The Defendant further argues that although he did advertise Stoney Hill Farm as a "bed and breakfast," it did not actually operate as one. In his testimony, the Defendant admitted he advertised the property as a "bed and breakfast" on the Stoney Hill Farm website, but he did not receive any interest from potential guests, and no individual rooms were rented. At trial, the Defendant argued that in order to "operate" as a "bed and breakfast" he must have actually rented individual rooms to guests, and served them breakfast.

> The Defendant argues that "advertising" does not constitute "operating" if no one actually stayed at the bed and breakfast. This argument is akin to advertising the opening of a new restaurant, with dining tables and chairs, kitchen equipment, and food stocked, but no one comes in to eat. Under the Defendant's argument, this hypothetical restaurant was

not actually "operating" as a restaurant, because there were no customers. The Court does not find this argument to be persuasive.

Further, Mr. Powlette's intent to advertise and operate as a bed and breakfast is clearly demonstrated by the evidence. At the BZA appeal hearing, Mr. Powlette testified that "during the week days, it [the property] was meant to be a bed and breakfast for out of town guests." State's Exhibit 20, page 36.

This Court finds the Defendant was "operating" the property as a "bed and breakfast."

(*Id.* at 4-5.)

{¶ 10} The trial court next rejected Powlette's argument that he was exempt from the agricultural-use zoning regulation even if he did use his property as a bed and breakfast. In particular, the trial court held that Powlette's property was not exempt under Ohio's "agritourism" statutes. In particular, the trial court was unpersuaded by Powlette's reliance on R.C. 519.21(C)(4), which generally precludes townships from prohibiting "agritourism" in districts zoned for agricultural use. The trial court found that Powlette's use of his property did not fit the statutory definition of "agritourism." It reasoned:

* * * This Court finds that operating a bed and breakfast, in other words renting rooms to overnight guests in a single family residence located on the property, does not constitute "agritourism," because it is not incidental to the agriculture on the property. Certainly picking your own pumpkin from a pumpkin patch, collecting chicken eggs from a chicken coop, or even feeding livestock, such as alpacas, would potentially

constitute agritourism. Although these activities occur on the Defendant's property, the overnight rental of rooms at the property is not directly related to these activities, and obviously not required to accomplish those agricultural tasks.

(*Id.* at 6.)

**{¶ 11}** Based on its determination that Powlette was operating a bed and breakfast during the time period at issue, that he was not exempt from the township's agricultural-district zoning regulations, and that he did not have a conditional-use certificate, the trial court found him guilty of violating Miami Township Zoning Resolution Article 8, Section 801, a minor-misdemeanor offense. (*Id.*) The trial court imposed a $30 fine and ordered Powlette to pay court costs of $170. (*Id.* at 7.) Powlette timely appealed without paying the fine or court costs.

**{¶ 12}** We begin our analysis by reviewing Miami Township Zoning Resolution Article 8, Section 801, which identifies "permitted uses" for land in an agricultural district such as the one where Powlette's 26-acre property is located. Permitted uses include, among other things, single-family dwellings on lots not less than 1.25 acres. A "bed and breakfast" is not a permitted use in an agricultural district. Instead, Article 8, Section 803 identifies a "bed and breakfast" as a conditional use in an agricultural district. Unfortunately, a "bed and breakfast" is not defined in Article 8 or anywhere else. The closest the Miami Township Zoning Resolution comes to defining a "bed and breakfast" is Article 8, Section 803. But that provision merely delineates various requirements that a "bed and breakfast" must satisfy to qualify for a conditional-use certificate. They include, among other things, (1) a requirement that the "owner or renter of the principle residential

structure lives on the premises," (2) a requirement that "[n]o more than five (5) rooms are provided for guest accommodation," (3) a requirement that "[r]oom rentals do not exceed seven (7) consecutive days, and (4) a requirement that [f]ood service is provided only to overnight (or longer) guests." Although Section 803 places these restrictions on the issuance of a conditional-use certificate for a "bed and breakfast," it does not define what qualifies as a "bed and breakfast" in the first place.

{¶ 13} Under his third assignment of error, Powlette argues that the absence of a definition for a "bed and breakfast" in Miami Township Zoning Resolution Section 801 or 803 resulted in a due-process violation, because the lack of a definition made it impossible for him to know whether what he was doing violated the law. Therefore, he argues that Sections 801 and 803 were unconstitutionally vague as applied to him. As part of his third assignment of error, Powlette also contends the State presented no evidence of him operating a "bed and breakfast" under the plain, ordinary dictionary meaning of that phrase. He raises this argument again under his fourth assignment of error, where he challenges the trial court's denial of his Crim.R. 29 motion.

{¶ 14} Powlette advertised his "farmhouse" as a bed and breakfast, advertised it on Air B&B, was informed of his violation of the zoning resolution, and eventually rented it out to a family although they prepared their own food there. Given Powlette's advertising, his admission before the BZA that the property "was meant to be a bed and breakfast," and the notice of violation provided to him, we have no hesitation in concluding that Powlette's intended use of the described property was as a bed and breakfast as contemplated by the zoning resolution. We note that the resolution could have been more precise to regulate short term rentals of any nature, but we will not engage in parsing out

whether the renters ate breakfast at all or whether a menu consisted of a full farmhouse meal or perhaps tea and scones or merely running water for morning coffee. On this record, the evidence was sufficient to conclude that Powlette's property came within the term "bed and breakfast" in the zoning resolution.

{¶ 15} We recognize that there was evidence that Powlette advertised his property as a bed and breakfast during the time period in the refiled complaint. The State presented screenshots of Powlette's Facebook page and a website referring to his property as a "bed and breakfast." (Plaintiff's Exhibit 9). The "URL" for Powlette's property was www.stoneyhillbedandbreakfast.com. Another webpage screenshot included a statement that "Stoney Hill Bed and Breakfast is family owned and operated," along with a link to an email address, www.stoneyhillbedandbreakfast@gmail.com. (Plaintiff's Exhibit 10c). Some of the referenced screenshots were undated, and others were dated between February 2, 2018 and March 2, 2018, which was just before the starting date alleged in the refiled complaint. There appears to be no dispute, however, that the Facebook and website references to "Stoney Hill Bed and Breakfast" continued to exist after the starting date alleged in the refiled complaint. Defense witness Kelly McCracken testified that she created the "Stoney Hill Bed and Breakfast" website on December 31, 2017. She did not remove all textual references to a "bed and breakfast" until August 26, 2018. After the first complaint against Powlette that resulted in a dismissal without prejudice, McCracken also changed the website's URL to "Stoney Hill Farm" on November 26, 2018. (Trial Tr. at 225-226, 231.) McCracken recalled that she engaged in essentially the same process for Powlette's Facebook advertising. (*Id.* at 230.) Zoning inspector Carlson conceded at trial that he had no knowledge of Powlette advertising his property as a "bed and breakfast"

after November 26, 2018. (*Id.* at 159, 176.) Nevertheless, the record establishes that Powlette did advertise his property as a "bed and breakfast" during the relevant time period.   In its decision, the trial court also referenced Powlette's "intent" to operate a bed and breakfast, as evidenced by his testimony at a July 9, 2018 BZA hearing involving a different issue. During that hearing, which involved Powlette's use of a barn, he commented that he "meant" to use the farmhouse as a bed and breakfast. (Plaintiff's Exhibit 20 at pg. 36.) During that same hearing, Powlette added that he had not yet actually hosted a bed and breakfast. (*Id.* at pg. 37.).

{¶ 16} The question remains, however, whether the State presented evidence of Powlette using his property as a bed and breakfast and whether that occurred in the proper time frame. At trial, the prosecutor presented no evidence that Powlette provided any guests with lodging between March 21, 2018 and December 7, 2018, the dates set forth in the refiled complaint. The trial court initially denied the State's request to amend the dates of the complaint. It was not until the end of the State's case that the court changed its position and allowed the dates to be amended to include April 12, 2018 through January 16, 2019.

{¶ 17} In our opinion, the court's change in position to allow an amendment in dates for the offense to encompass events not included in or contemplated by the refiled complaint was error. This is not a case where the dates in the refiled complaint were mistaken, or where a clerical error was made, or where the events described in the complaint or provided in discovery were found to have actually occurred on a different date. Indeed Crim.R. 7(C) permits amendment of a complaint as long as "no change is made in the name or identity of the crime charged."

{¶ 18} In *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (1994), the defendant was indicted for committing a theft offense on June 14, 1991 when he removed his car from a repair facility on that date without paying. A week later he returned the vehicle to the garage owner's home for repair corrections, but he returned a few minutes later and reclaimed and removed the car again without paying. At the close of the state's case an amendment of the indictment was allowed changing the date to "June 14, 1991 through June 21, 1991, inclusive." The date change allowed consideration of events and perhaps the conviction of Vitale for the events which occurred at the garage owner's home a week after the date charged for the original retrieval of the car. The appellate court determined that changing the date changed the indicted crime contrary to Crim.R. 7(D) and presented a "grave risk" that Vitale was convicted on evidence not presented to the grand jury.

{¶ 19} Conversely, in *State v. Honeycutt*, 2d Dist. Montgomery No. 19004, 2002 WL 1438648 (July 5, 2002), the defendant was indicted for two counts of menacing by stalking and violation of a civil protection order "on or about September 11, 2000." An amendment of that date was permitted to refer to events "between April, 1999 and September 11, 2000." The facts revealed the defendant began menacing and stalking the victim with progressively disturbing and repeated phone calls and letters on May 2, 1999, and he had previously been convicted of menacing by stalking the same victim in October 1999. On appeal, we distinguished *Vitale*, because Honeycutt was charged with a "pattern of conduct" and further the bill of particulars alleged that a September 11, 2000 phone call "and the events of the prior conviction" constituted a pattern of conduct under R.C. 2903.211. We said: "[a]mending the indictment to include incidents occurring between

April of 1999 and September 11, 2000 did not change the fact that he was charged with a pattern of conduct. The amendment in *Vitale* added separate crimes to the indictment for which the defendant had not been charged." *Id.*, *3. The case before us is more like *Vitale* and less like *Honeycutt*. We conclude that the amendment of the complaint here was error in that it improperly changed the offense from events that occurred before December 7, 2018 and added the events that occurred from December 30, 2018 to January 1, 2019.

{¶ 20} Powlette's fourth assignment of error is couched in terms contending that the verdict was against the manifest weight of the evidence. However, his argument -- that no one actually stayed at the property as of December 7, 2018 and "[i]ntent is not operating" (Appellant's brief at 30) -- if factually accurate, is a sufficiency argument. A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. The only evidence of anyone staying at the farmhouse came from Kristen Lipscomb Sund. She testified that her group rented the farmhouse from December 30, 2018 to January 1, 2019. Based on the record before us, we are compelled to conclude that there was no evidence Powlette used his property as a bed and breakfast during the time period in the refiled complaint. Accordingly, the judgment of the trial court will be vacated with regard to Powlette's operating his property contrary to the zoning resolution between the dates of March 21, 2018 and December 7, 2018. We have further

concluded that extending that time period to January 16, 2019 to include dates that were not stated in, or contemplated by, the events charged in the refiled complaint was a denial of due process.

{¶ 21} We recognize that there is evidence that Powlette advertised his property as a "bed and breakfast" during the original time period in the refiled complaint. The State presented screenshots of Powlette's Facebook page and a website referring to his property as a "bed and breakfast." (Plaintiff's Exhibit 9). The "URL" for Powlette's property was www.stoneyhillbedandbreakfast.com. Another webpage screenshot included a statement that "Stoney Hill Bed and Breakfast is family owned and operated," along with a link to an email address, www.stoneyhillbedandbreakfast@gmail.com. (Plaintiff's Exhibit 10c.) Some of the referenced screenshots were undated, and others were dated between February 2, 2018 and March 2, 2018, which was just before the starting date alleged in the refiled complaint. There appears to be no dispute, however, that the Facebook and website references to "Stoney Hill Bed and Breakfast" continued to exist after the starting date alleged in the refiled complaint. Defense witness Kelly McCracken testified that she created the "Stoney Hill Bed and Breakfast" website on December 31, 2017. She did not remove all textual references to a "bed and breakfast" until August 26, 2018. After the first complaint against Powlette that resulted in a dismissal without prejudice, McCracken also changed the website's URL to "Stoney Hill Farm" on November 26, 2018. (Trial Tr. at 225-226, 231.) McCracken recalled that she engaged in essentially the same process for Powlette's Facebook advertising. (*Id.* at 230.) Zoning inspector Carlson conceded at trial that he had no knowledge of Powlette advertising his property as a "bed and breakfast" after November 26, 2018. (*Id.* at 159, 176.)

Nevertheless, the record establishes that Powlette did advertise his property as a "bed and breakfast" during the relevant time period. In its decision, the trial court also referenced Powlette's "intent" to operate a bed and breakfast, as evidenced by his testimony at a July 9, 2018 BZA hearing involving a different issue. During that hearing, which involved Powlette's use of a barn, he commented that he "meant" to use the farmhouse as a bed and breakfast. (Plaintiff's Exhibit 20 at pg. 36.) During that same hearing, Powlette added that he had not yet actually hosted a bed and breakfast. (*Id.* at pg. 37.)

{¶ 22} In sum, the State's evidence consisted of Powlette's (1) intending to use his property as a "bed and breakfast" in July 2018, (2) advertising his property as a bed and breakfast during the relevant time period before ultimately removing all references to a "bed and breakfast" from Facebook and his website and (3) renting his property to one group from December 30, 2018 to January 1, 2019.

{¶ 23} In our view, the foregoing evidence did not support Powlette's conviction under Miami Township Zoning Resolution Article 8, Section 801. As noted above, that provision identifies certain permitted "uses" of property. Another provision, Section 803, identifies a "bed and breakfast" as a conditional use requiring a conditional-use certificate. The complaint charged Powlette with violating Section 801 by unlawfully "advertis[ing] and operat[ing] a bed and breakfast" because he did not obtain a conditional-use certificate.

{¶ 24} We note that Sections 801 and 803 are land "use" regulations. For purposes of the misdemeanor complaint against Powlette then, the ultimate question is not whether he "advertised" his property as a bed and breakfast. Strictly speaking, the question also

is not whether he "operated" a bed and breakfast. Rather, insofar as Sections 801 and 803 regulate the "use" of property, the narrow issue is whether the State proved beyond a reasonable doubt that Powlette "used" his property as a "bed and breakfast" without a conditional-use certificate in violation of Miami Township's land-use regulations.

{¶ 25} In our view, Powlette's expressed intent to operate a bed and breakfast during the unrelated July 2018 BZA hearing or his act of advertising the property as a bed and breakfast for a period of time could perhaps support injunctive relief against Powlette prohibiting him from proceeding, but it did not establish a criminal violation of Miami Township Zoning Resolution Article 8, Section 801 between the dates of March 21, 2018 and December 7, 2018. Regardless of what Powlette "meant" or "intended" or even "attempted" to do, the State was required to prove that he actually used his property as a bed and breakfast without a conditional-use certificate during the original times reflected in the refiled complaint. We further note that an attempt to commit a minor misdemeanor, including attempting to violate the zoning regulation here, is not an offense. R.C. 2923.02(E)(1). ("An attempt to commit a minor misdemeanor * * * is not an offense under this section.).

{¶ 26} The only remaining issue is whether Powlette used his property as a bed and breakfast by advertising it as such. We conclude that the advertising did not establish his use of the property for that purpose. The word "use" means "to put into action or service." *See* Merriam-Webster Dictionary, "Use," www.merriam-webster.com/dictionary/use (accessed Oct. 27, 2020); *see also* Dictionary.com, "Use," www.dictionary.com/browse/use (accessed Oct. 27, 2020) (defining "use" as "to employ for some purpose," "to put into service," or "to make use of"). Although advertising, in an

appropriate case, might support an inference of use, we are unpersuaded in this case that advertising a property as a bed and breakfast by itself is enough to prove use of the property for that purpose.

{¶ 27} Based on the reasoning set forth above, we conclude that the trial court should not have permitted amendment of the dates in the complaint not contemplated by the events intended to be reflected in the refiled complaint and the trial court erred in finding Powlette guilty of violating Miami Township Zoning Resolution Article 8, Section 801 by unlawfully using his property as a bed and breakfast without a required conditional-use certificate during the charged time period. Accordingly, we sustain Powlette's first assignment of error insofar as it challenges the amendment of the complaint. We sustain the fourth assignment of error to the extent that it contends the evidence was insufficient to demonstrate he used the property as a bed and breakfast because "intent is not operating."

{¶ 28} Finally, we conclude Powlette was not denied due process by renewal of the charge against him after dismissal without prejudice with agreed conditions which he apparently did not meet. Application of the zoning resolution to Powlette's bed and breakfast facility did not violate due process based on vagueness and it did not constitute agritourism for the reasons stated in the trial court's decision. We overrule the second, third and fifth assignments of error.

{¶ 29} The judgment of the Miamisburg Municipal Court finding that Powlette violated Miami Township Zoning Resolution Article 8, Section 801 between March 21, 2018 and December 7, 2018 is vacated.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.


Copies sent to:

Christine M. Burk
Kent J. Depoorter
Hon. Robert W. Rettich, III