[Cite as *Powlette v. Carlson*, 2022-Ohio-3257.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| DARREN M. POWLETTE | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29437 |
| | : | |
| v. | : | Trial Court Case No. 2021-CV-4498 |
| | : | |
| ALEX CARLSON | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2022.

. . . . . . . . . . .

KENT J. DEPOORTER, Atty. Reg. No. 0058487, 7501 Paragon Road, Dayton, Ohio 45459
  Attorney for Plaintiff-Appellant

EDWARD J. DOWD, Atty. Reg. No. 0018681, CHRISTOPHER T. HERMAN, Atty. Reg. No. 0076894, & NATHANIEL W. ROSE, Atty. Reg. No. 0099458, 8163 Old Yankee Street, Suite C, Dayton, Ohio 45458
  Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Darren M. Powlette appeals from the trial court's judgment on the pleadings in favor of Alex Carlson on Powlette's complaint for malicious prosecution. We affirm the trial court's judgment.

{¶ 2} Some of the history of this case was discussed in a prior appeal, and we reiterate it here:

The present dispute began when Miami Township zoning inspector Alex Carlson sent Powlette a March 21, 2018 "Notice of Violation." The notice advised Powlette that he was violating Miami Township Zoning Resolution Article 8, Section 801 by using his property at 7757 Upper Miamisburg Road as a "bed and breakfast." The notice further advised him to resolve the matter by (1) appealing to the Board of Zoning Appeals ("BZA"), (2) applying for a conditional-use certificate to use his property as a bed and breakfast, or (3) ceasing operation as a bed and breakfast.

A criminal complaint subsequently was filed against Powlette on May 1, 2018. The misdemeanor complaint, which was sworn to by Carlson, alleged that beginning on April 19, 2018 and continuing through the date of the affidavit Powlette did unlawfully "advertise and operate a bed and breakfast without conditional use certification at 7757 Upper Miamisburg Road[.]" The matter proceeded to a November 26, 2018 hearing in Miamisburg Municipal Court. The prosecutor asked the trial court to "conditionally dismiss" the complaint without prejudice. The prosecutor's

conditions were that within 10 days Powlette was to cease advertising for a bed and breakfast. He also was not to operate a bed and breakfast on the property without a conditional-use certificate. At the conclusion of the hearing, the trial court dismissed the complaint without prejudice "on the condition the defendant remove all public notice, that is web site, Facebook, et cetera, of conducting a bed and breakfast operation on the subject property and that compliance with the foregoing occur within ten days[.]"

Thereafter, on December 7, 2018, a new criminal complaint was filed against Powlette. Like the prior complaint, it was sworn to by Carlson. It alleged that between the dates of March 21, 2018 and December 7, 2018 Powlette did unlawfully "advertise and operate a bed and breakfast at 7757 Upper Miamisburg Road[.]"   * * *

*State v. Powlette*, 2020-Ohio-5212, 162 N.E.3d 172, ¶ 3-5.

{¶ 3} The refiled case was tried to the bench in the Miamisburg Municipal Court on May 31, 2019, and Powlette was found guilty in July 2019.   Powlette appealed, and we reversed his conviction in November 2020.  *Id.*

{¶ 4} Powlette filed his action against Carlson in November 2021, alleging malicious prosecution, claiming that Carlson had acted with "actual malice" and engaged in "intentional and malicious conduct."   He alleged that he had removed all advertising of a bed and breakfast prior to November 26, 2018 and he had not advertised or operated a bed and breakfast at his property at any time after November 26, 2018.   Powlette asserted that there was "significant media interest" in the case and that, after the

dismissal, he had "commented to local media that 'The next time the township files a criminal charge against someone, they really should investigate first.' "

**{¶ 5}** Powlette's complaint alleged:

> The prosecution of [Powlette] by the filing of a criminal Complaint by [Carlson] on December 7, 2018 was instituted by Defendant Carlson with malice and without probable cause, in that: (a) the filing of the charge was done in retaliation for [Powlette's] media comments that reflected poorly on Carlson and Miami Township; (b) Carlson did no investigation before filing either charge; (c) having agreed to the dismissal of the original criminal charge upon the condition that [Powlette] cease advertising his property as a bed and breakfast within ten days of the date of that dismissal, [Carlson] had no evidence that [Powlette] had advertised the property as a bed and breakfast after May 1, 2018; (d) [Carlson] had no evidence that [Powlette] had operated a bed and breakfast on his property in violation of local law at any time.

Complaint at ¶ 16.

**{¶ 6}** Powlette further asserted that Carlson's actions "demonstrated actual malice toward [him]." Powlette asserted that, at a bench trial in the second action held on May 31, 2019, Carlson acknowledged that he had no knowledge of Powlette's advertising his property as a bed and breakfast after November 26, 2018, Carlson had never been to the property, and Carlson had never spoken to anyone who had stayed at a bed and breakfast on Powlette's property in the timeframes specified in either criminal complaint.

{¶ 7} Powlette alleged that, as a result of Carlson's intentional and malicious conduct, he had incurred attorney fees in the amount of $11,487, suffered damage to his reputation, and sustained economic loss. Powlette sought compensatory and punitive damages, attorney fees, prejudgment and post-judgment interest, and court costs.

{¶ 8} In December 2021, Carlson filed a motion to dismiss Powlette's complaint for failure to state a claim. Carlson later withdrew his motion to dismiss and filed an answer to the amended complaint. In his answer, Carlson asserted the affirmative defense of immunity pursuant to R.C. Chapter 2744.

{¶ 9} On January 18, 2022, Carlson filed a motion for judgment on the pleadings, asserting that pursuant to R.C. Chapter 2744, he was immune from liability. He asserted that he acted as the zoning inspector in his role as the Deputy Director of Community Development for Miami Township, which involved conducting code enforcement inspections of commercial properties and zoning enforcement.

{¶ 10} Regarding the initial complaint against Powlette, Carlson asserted that he had "provided all of the materials and evidence he had collected, leading up to and after issuing the initial zoning violation, to the Miamisburg Municipal Court Prosecutor." Regarding the second complaint, Carlson asserted that Powlette had not complied with the conditional dismissal of the first case and had continued to advertise the property as a bed and breakfast. He pointed out that every criminal complaint originating in the Miamisburg Prosecutor's Office required the signature of a prosecutor; "[a]s is the nature of any criminal complaint, it requires that a prosecutor or grand jury review the materials and find probable cause within the evidence provided." Further, Carlson asserted that

he had acted "in his governmental discretion," simply "did his job" when he turned over evidence of the zoning violation, and "did not 'cause' a criminal complaint to be brought." because only a prosecutor may do so.

{¶ 11} On February 1, 2022, Powlette opposed the motion for judgment on the pleadings, asserting that it was a "reasonable inference" from the filing of the complaint that Carlson "was essential in causing the complaint to be filed," because it was his "negligent investigation" that had resulted in the complaint. Powlette asserted that, although R.C. 2744.03(A) sets forth when an employee is immune from suit, R.C. 2744.03(A)(6) provides an exception to immunity if the employee's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." According to Powlette, he offered proof of actual malice and/or malice could be "legally inferred" from a lack of probable cause when bringing a criminal complaint against him.

{¶ 12} The trial court granted Carlson's motion for judgment on the pleadings, stating:

Because [Powlette] continued to advertise this business use of his property after the period ordered to cease and desist the violation, [Carlson] turned his information over to the prosecuting attorney for the Township and a criminal complaint was filed against [Powlette]. The first complaint was conditionally dismissed on the condition that [Powlette] cease his advertising allegedly illegal use of the property for a bed and breakfast, but [Powlette] did not comply with that condition. A second criminal complaint was filed. The case went to trial and [Powlette] was found guilty of a minor

misdemeanor. He appealed his conviction and the Court of Appeals vacated the conviction, * * * holding that advertising his intention to conduct a bed and breakfast was not "using" the property as a bed and breakfast and, therefore, [Powlette] was not validly convicted of illegal use of his property.

[Powlette] alleges that the filing of the second criminal complaint constituted malicious prosecution entitling him to compensatory and punitive damages. He alleges that the Court of Appeals decision vacating the conviction constitutes a termination of the criminal case in his favor, an element of a malicious prosecution case. However, [Powlette] fails to allege facts to support his allegation that defendant, Alex Carlson, the zoning inspector, caused the criminal complaint to be filed against him without probable cause to do so. A malicious prosecution claim requires some factual allegations that would support an allegation that there was no probable cause to issue the Notices of Violations that led to the filing of a criminal complaint. Given that the criminal charges went to a bench trial and [were] not dismissed before trial, it is presumed that the charges were based on probable cause that a criminal act had occurred. [Powlette] has not pled facts that would support the allegation of lack of probable cause or bad faith or malice.

Malicious prosecution requires that the criminal complaint (1) was filed with malice; (2) without probable cause; (3) and termination of the

prosecution is in favor of the criminal defendant (now, the plaintiff). *Trussel v. GMC*, 53 Ohio St.3d 142, 144, 559 N.E.2d 732 (1990). Malice implies an improper purpose[ ], or an illegitimate reason for commencing the criminal prosecution. [Powlette] alleges that [Carlson] turned his information over to the prosecuting attorney who filed the criminal complaint. There are no factual allegations of an improper purpose. In addition, as indicated above, the criminal charges went forward to a bench trial providing a presumption of probable cause. The reversal on appeal had nothing to do with the state of mind of Alex Carlson in referring the issue to the prosecutor representing the township. It was based on the appellate court's reading of the zoning code differently than how the zoning inspector read it. Thus, [Powlette] has not alleged facts supporting or allowing an inference of malice on the part of [Carlson].

Decision & Entry, p. 1-3.

{¶ 13} Powlette appeals, asserting the following assignment of error:

THE COURT ABUSED ITS DISCRETION BY FINDING THAT APPELLANT FAILED TO ALLEGE FACTS TO SUPPORT THE ALLEGATION OF LACK OF PROBABLE CAUSE OR MALICE AND THEREFORE ERRONEOUSLY GRANTED THE MOTION FOR JUDGMENT ON THE PLEADINGS.

{¶ 14} Powlette contends that the trial court did not discuss the pertinent facts that supported his argument that Carlson had acted maliciously and without probable cause,

namely that Carslon "conducted <u>no investigation</u>" before he filed the first complaint then filed the second complaint "<u>after</u> the first complaint was conditionally dismissed and he had <u>no evidence</u> that Powlette had violated the conditions of the dismissal by advertising his property as a bed and breakfast." (Emphasis sic.) Powlette argues that it can be reasonably inferred that his (Powlette's) public comments about the matter caused Carlson to file the second criminal complaint, because Carlson "had no other reason to do so" and admitted that he "had <u>no information</u> to conclude Powlette had violated the conditions of the dismissal."

**{¶ 15}** Powlette further asserts that the facts pled by him, if taken as true, and the reasonable inferences that could be drawn therefrom clearly supported a conclusion that Carlson had "instituted and continued to prosecute" a criminal complaint without probable cause. He argues that the trial court never addressed the issue of malice. He also challenges the trial court's conclusion that the charges were based on probable cause and contends that the court failed to cite "case law to support its dubious logic." He argues that, in the absence of evidence that he did anything other than abide by the terms of the conditional dismissal, the "only subsequent fact" which could have motivated Carlson to file the second criminal complaint was Powlette's comment to the local media, which "would by any measure constitute malice."

**{¶ 16}** Carlson responds that Powlette failed to assert that Carlson did anything more than turn over information to the prosecuting attorney, who filed the complaint, pointing out that only in "very rare cases can a third-party – other than a prosecutor – be liable for malicious prosecution." Carlson asserts that, at worst, his interpretation of the

zoning resolution at issue was "an innocent mistake," but even that conclusion would be "a stretch" with respect to probable cause, because the prosecutor and trial court moved forward with the case. According Carlson, he was not responsible for determining whether probable cause existed and moving forward with charges; rather, the prosecutor made these determinations, "as evidenced by his signature" on the second complaint.

{¶ 17} Carlson asserts that Powlette did not provide any evidence that Carlson 1) gave information to the prosecutor for any reason other than enforcing the zoning code or 2) had knowledge of Powlette's public comments to the media or was angered by them. He also asserts that the prosecutor "nullifie[d] any malicious sentiment that may have motivated [Carlson] to turn over the investigatory materials," as noted by the trial court at the hearing on November 26, 2018.

{¶ 18} Regarding Powlette's assertion that Carlson failed to investigate, Carlson directs our attention to our opinion in *Powlette,* 2020-Ohio-5212, 162 N.E.3d 172, at ¶ 21, wherein we discuss the evidence in the first case that Powlette had advertised his property and/or intended to use it as a bed and breakfast. He also argues that the prosecutor's filing the criminal complaint and the subsequent bench trial should be dispositive of the issue of probable cause. Carlson asserts that he never made a determination as to whether there was probable cause; he simply "did his job and turned over materials that he believed supported a violation of the Zoning Resolution."

{¶ 19} Finally, and alternatively, Carlson asserts that the trial court's judgment should be affirmed based on immunity under the Ohio Revised Code Chapter 2744. He argues that the trial court's judgment may be affirmed based on either a failure to meet

the elements of malicious prosecution – a finding of probable cause or lack of malice – or a sua sponte finding of immunity under R.C. 2744.

**{¶ 20}** As this Court has noted:

> Civ.R. 12(C) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A copy of any written instrument attached to a pleading is a part of the pleading for all purposes." Civ.R. 10(C). "A motion for judgment on the pleadings pursuant to Civ.R. 12(C) presents only questions of law," and the standard of review is de novo. *Dearth v. Stanley*, Montgomery App. No. 22180, 2008-Ohio-487. "Determination of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings and any writings attached to the complaint. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165, 297 N.E.2d 113, 116-117. Dismissal is appropriate under Civ.R. 12(C) when, after construing all material allegations in the complaint, along with all reasonable inferences drawn therefrom in favor of the nonmoving party, the court finds that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontius* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931, 936." *Id.*

*Inskeep v. Burton*, 2d Dist. Champaign No. 2007-CA-11, 2008-Ohio-1982, ¶ 7.

**{¶ 21}** As Powlette asserts, his conviction was reversed by this Court in *Powlette*, 2020-Ohio-5212, 162 N.E.3d 172. In that case, Powlette was convicted "on a complaint

alleging that he 'advertise[d] and operate[d] a bed and breakfast' without a conditional use permit." *Id.* at ¶ 1. Powlette asserted five assignments of error:

> First, he contend[ed] the trial court erred in allowing the prosecutor to amend the complaint to include offense dates past the date that was sworn to in the complaint. Second, he claim[ed] the trial court denied him due process and a speedy trial by dismissing the original complaint, not providing adequate notice of a new violation, and refiling the complaint. Third, he argue[d] that Sections 801 and 803 of Miami Township Zoning Resolution Article 8 are vague and violate due process as applied to him. Fourth, he assert[ed] that the trial court's finding that he operated a bed and breakfast was against the manifest weight of the evidence. Fifth, he maintain[ed] that the trial court abused its discretion by finding that Miami Township could regulate his having a bed and breakfast because his activity was agritourism not subject to local regulation. * * *

*Id.* at ¶ 2.

{¶ 22} The history of this case, as set forth in *Powlette*, is recounted above. Additionally, the trial court made clear at trial on May 31, 2019, that the matter was before the court "solely on the refiled case * * * and not the prior case that conditionally had been dismissed." *Id.* at ¶ 6. We further noted that, notwithstanding that the trial court rejected the prosecutor's request before the trial to amend the end date in the complaint from December 7, 2018 to January 16, 2019, the trial court stated that it would allow the prosecutor to present evidence about guests staying at Powlette's property between

December 7, 2018 and January 16, 2019. Finally, the trial court rejected an argument by Powlette that the refiled case had not been properly commenced because he had not received a new notice of violation with a corresponding time to cure the alleged violation before criminal proceedings were pursued. *Id.*

{¶ 23} This Court noted that the trial court heard from four witnesses at trial: for the prosecution, Kristen Lipscomb Sund, who stayed at the property from December 30, 2018 to January 1, 2019, and Carlson; and for the defense, Kelly McCracken, who developed and maintained Powlette's websites, and Powlette. *Id.* at ¶ 7. At the conclusion of the State's case, the prosecutor moved to amend the complaint to indicate that Powlette's offense had occurred between April 12, 2018 and January 16, 2019. Over Powlette's objection, the trial court allowed the amendment of the dates. *Id.*

{¶ 24} The trial court's summary of the evidence included a statement that Carlson had "investigated [Powlette's] property by visiting the Stoney Hill Farm Facebook page and the Stoney Hill Farm website, where he observed bed and breakfast advertising." After summarizing the testimony presented, the court rejected Powlette's assertion that he had not operated a bed and breakfast. *Id.* at ¶ 9. It also rejected Powlette's argument that he was exempt from the agricultural-use zoning regulation even if he did use his property as a bed and breakfast. *Id.* at ¶ 10.

{¶ 25} In the appeal, we noted that, based on its determinations that Powlette had been operating a bed and breakfast during the time period at issue, that he had not been exempt from the township's agricultural-district zoning regulations, and that he had not had a conditional-use certificate, the trial court found him guilty of violating Miami

Township Zoning Resolution Article 8, Section 801, a minor-misdemeanor offense. The trial court imposed a fine and ordered Powlette to pay court costs. *Id.* at ¶ 11.

{¶ 26} After reviewing Miami Township Zoning Resolution Article 8, Section 801, we agreed with the trial court that a bed and breakfast is not a permitted use in an agricultural district. *Id.* at ¶12. We rejected Powlette's argument that the absence of a specific definition of a "bed and breakfast" in the zoning resolution violated his due process rights by making it impossible for him to know whether what he was doing violated the law. *Id.* at ¶ 13.

{¶ 27} In response to Powlette's argument that the State had presented no evidence of his operating a bed and breakfast under the plain and ordinary dictionary definition of that phrase, we stated:

> Powlette advertised his "farmhouse" as a bed and breakfast, advertised it on Air B&B, was informed of his violation of the zoning resolution, and eventually rented it out to a family although they prepared their own food there. Given Powlette's advertising, his admission before the BZA that the property "was meant to be a bed and breakfast," and the notice of violation provided to him, we have no hesitation in concluding that Powlette's intended use of the described property was as a bed and breakfast as contemplated by the zoning resolution. * * * On this record, the evidence was sufficient to conclude that Powlette's property came within the term "bed and breakfast" in the zoning resolution.

*Id.* at ¶ 14.

{¶ 28} However, in reversing the trial court's finding of a zoning violation, we stated:

We recognize that there was evidence that Powlette advertised his property as a bed and breakfast during the time period in the refiled complaint. The State presented screenshots of Powlette's Facebook page and a website referring to his property as a "bed and breakfast." The "URL" for Powlette's property was www.stoneyhillbedandbreakfast.com. Another webpage screenshot included a statement that "Stoney Hill Bed and Breakfast is family owned and operated," along with a link to an email address, www.stoneyhillbedandbreakfast@gmail.com. Some of the referenced screenshots were undated, and others were dated between February 2, 2018 and March 2, 2018, which was just before the starting date alleged in the refiled complaint. There appears to be no dispute, however, that the Facebook and website references to "Stoney Hill Bed and Breakfast" continued to exist after the starting date alleged in the refiled complaint. Defense witness Kelly McCracken testified that she created the "Stoney Hill Bed and Breakfast" website on December 31, 2017. She did not remove all textual references to a "bed and breakfast" until August 26, 2018. After the first complaint against Powlette that resulted in a dismissal without prejudice, McCracken also changed the website's URL to "Stoney Hill Farm" on November 26, 2018. McCracken recalled that she engaged in essentially the same process for Powlette's Facebook advertising.

Zoning inspector Carlson conceded at trial that he had no knowledge of Powlette advertising his property as a "bed and breakfast" after November 26, 2018. Nevertheless, the record establishes that Powlette did advertise his property as a "bed and breakfast" during the relevant time period. In its decision, the trial court also referenced Powlette's "intent" to operate a bed and breakfast, as evidenced by his testimony at a July 9, 2018 BZA hearing involving a different issue. During that hearing, which involved Powlette's use of a barn, he commented that he "meant" to use the farmhouse as a bed and breakfast. During that same hearing, Powlette added that he had not yet actually hosted a bed and breakfast.

(Citations omitted.) *Id.* at ¶ 14-15.

**{¶ 29}** It was also significant to this Court that "the prosecutor presented no evidence that Powlette provided any guests with lodging between March 21, 2018 and December 7, 2018, the dates set forth in the refiled complaint." *Id.* at ¶ 16. We concluded that the amendment of the complaint had been error in that it improperly changed the offense from events that occurred before December 7, 2018 and added the events that occurred from December 30, 2018 to January 1, 2019, denying Powlette due process. *Id.* at ¶ 19, 20.

**{¶ 30}** We next addressed an argument that we construed as a sufficiency argument: Powlette's assertions that no one had actually stayed at the property as of December 7, 2018, and that an *intent to* operate is not the same as actual operation. *Id.* at ¶ 20. Based upon the testimony of Kristen Lipsccomb Sund that she had rented the

farmhouse from December 30, 2018, to January 1, 2019, we concluded that "there was no evidence Powlette used his property as a bed and breakfast during the time period in the refiled complaint." *Id.*

{¶ 31} We concluded as follows:

In sum, the State's evidence consisted of Powlette's (1) intending to use his property as a "bed and breakfast" in July 2018, (2) advertising his property as a bed and breakfast during the relevant time period before ultimately removing all references to a "bed and breakfast" from Facebook and his website and (3) renting his property to one group from December 30, 2018 to January 1, 2019.

In our view, the foregoing evidence did not support Powlette's conviction under Miami Township Zoning Resolution Article 8, Section 801. As noted above, that provision identifies certain permitted "uses" of property. Another provision, Section 803, identifies a "bed and breakfast" as a conditional use requiring a conditional-use certificate. The complaint charged Powlette with violating Section 801 by unlawfully "advertis[ing] and operat[ing] a bed and breakfast" because he did not obtain a conditional-use certificate.

We note that Sections 801 and 803 are land "use" regulations. For purposes of the misdemeanor complaint against Powlette then, the ultimate question is not whether he "advertised" his property as a bed and breakfast. Strictly speaking, the question also is not whether he "operated" a bed and

breakfast. Rather, insofar as Sections 801 and 803 regulate the "use" of property, the narrow issue is whether the State proved beyond a reasonable doubt that Powlette "used" his property as a "bed and breakfast" without a conditional-use certificate in violation of Miami Township's land-use regulations.

In our view, Powlette's expressed intent to operate a bed and breakfast during the unrelated July 2018 BZA hearing or his act of advertising the property as a bed and breakfast for a period of time could perhaps support injunctive relief against Powlette prohibiting him from proceeding, but it did not establish a criminal violation of Miami Township Zoning Resolution Article 8, Section 801 between the dates of March 21, 2018 and December 7, 2018. Regardless of what Powlette "meant" or "intended" or even "attempted" to do, the State was required to prove that he actually used his property as a bed and breakfast without a conditional-use certificate during the original times reflected in the refiled complaint. * * *

The only remaining issue is whether Powlette used his property as a bed and breakfast by advertising it as such. We conclude that the advertising did not establish his use of the property for that purpose. * * * Although advertising, in an appropriate case, might support an inference of use, we are unpersuaded in this case that advertising a property as a bed and breakfast by itself is enough to prove use of the property for that

purpose.

*Id.* at ¶ 22-26.

{¶ 32} As noted above, in Powlette's malicious prosecution case, the trial court determined that Powlette had not pled facts that supported his allegation of a lack of probable cause, bad faith, or malice as the elements of malicious prosecution. The court did not consider Carlson's affirmative defense of immunity. As noted in *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, "[w]hen a plaintiff files a civil action against an employee of a political subdivision, the employee's entitlement to statutory immunity is a separate question from the plaintiff's ability to establish the elements of his or her claim." *Id.* at ¶ 10.

{¶ 33} "The issue of governmental immunity is a question of law. *Conley v. Shearer,* 64 Ohio St.3d 284, 595 N.E.2d 862 (1992). When presented with a question of law, we apply a de novo standard of review." *Coterel v. Reed*, 2016-Ohio-7411, 72 N.E.3d 1159, ¶ 11 (2d Dist.), citing *Hayward v. Summa Health Sys./Akron City Hosp.,* 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 23.

> * * * The Ohio Immunity statute creates a presumption of immunity for official government acts, carried out by political subdivisions and their employees. *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1st Dist.1995). The Ohio immunity statute provides three exceptions to the general rule favoring governmental immunity. The exceptions at issue are based on R.C. 2744.03(A)(6)(a) and (b), which eliminates a public employee's

immunity defense if: (a) "the employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities"; or (b) "the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

* * *

* * * To overcome the presumption of statutory immunity, the facts must support a conclusion that the employee acted manifestly outside the scope of employment, with a malicious purpose, in bad faith, or in a wanton or reckless manner. * * *

* * *

For purposes of statutory immunity, the definitions of the elements of the defense were recently reviewed by the Fifth District Court of Appeals as follows:

" 'In the context of political subdivision immunity, malicious purpose has been defined as the willful and intentional design to do injury.' " *Friga v. E. Cleveland,* 8th Dist. Cuyahoga No. 88262, 2007-Ohio-1716, ¶ 15, quoting *Piro v. Franklin Twp.,*102 Ohio App.3d 130, 139, 656 N.E.2d 1035 (9th Dist.1995), citing *Jackson v. Butler Cty. Bd. of Cty. Commrs.,* 76 Ohio App.3d 448, 453, 602 N.E.2d 363 (12th Dist.1991). Bad faith " 'connotes a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of

fraud.' " *Jackson,* quoting *Slater v. Motorists Mut. Ins. Co.,* 174 Ohio St. 148, 187 N.E.2d 45 (1962), paragraph two of the syllabus.

In *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, the Ohio Supreme Court held "wanton," "willful," and "reckless" describe different and distinct degrees of care and are not interchangeable. *Id.* at paragraph one of syllabus.   * * *

"Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Id.* at ¶ 33.   Wanton misconduct has been likened to conduct that manifests a "disposition to perversity," but the Supreme Court abandoned "disposition to perversity" as an element of the definition of wanton misconduct in *Hawkins v. Ivy,* 50 Ohio St.2d 114, 363 N.E.2d 367 (1977).   *Id.* at ¶ 28. " '[M]ere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor.' " *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994) (Citation omitted).   "[I]t must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Anderson, supra* at ¶ 25 citing *Universal Concrete Pipe Co. v. Bassett,* 130 Ohio

St. 567, 200 N.E. 843 (1936), paragraph two of syllabus.

"Willful conduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson, supra* at ¶ 32. Willful misconduct involves "an intent, purpose, or design to injure." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 375, 696 N.E.2d 201. (Citation omitted). Willful misconduct is something more than negligence and it imports a more positive mental condition prompting an act than wanton misconduct. *Phillips v. Dayton Power & Light Co.,* (1994), 93 Ohio App.3d 111, 119, 637 N.E.2d 963. (Citation omitted). "Willful misconduct" involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result. *Mashburn v. Dutcher,* 5th Dist., 2012-Ohio-6283, 14 N.E.3d 383, ¶ 45.

Both wanton and willful describes conduct that is greater than negligence and can be summarized as follows: willful conduct is the intent to harm someone and wanton misconduct is the failure to exercise any care whatsoever. *Anderson, supra*, at ¶ 48.

"Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is

unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at ¶ 34. (Citations omitted). *Rondy v. Richland Newhope Industries, Inc.,* 2016-Ohio-118, 57 N.E.3d 369, ¶¶ 42-47 (5th Dist.).

The Ninth District Court of Appeals recently addressed the term "manifestly outside the scope of employment" as that term is used in the immunity statute as follows:

R.C. Chapter 2744 does not define what conduct is "manifestly outside the scope of the employee's employment or official responsibilities." R.C. 2744.03(A)(6)(a). However, Ohio courts have generally held that " 'conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business.' " *Curry v. Blanchester,* 12th Dist. Clinton Nos. CA2009-08-010, CA2009-08-012, 2010-Ohio-3368, ¶ 30, quoting *Jackson v. McDonald,* 144 Ohio App.3d 301, 307, 760 N.E.2d 24 (5th Dist.2001). "For an act to fall within the scope of employment, it must be 'calculated to facilitate or promote the business for which the [employee or agent] was employed.' " *Johnson v. Godsey,* 2d Dist. Clark No. 2012 CA 80, 2013-Ohio-3277, ¶ 32, quoting *Osborne v. Lyles,* 63 Ohio St.3d 326, 329, 587 N.E.2d 825 (1992). "In general, if an act is committed within the scope of employment, it will be authorized, either expressly or impliedly, by the employer."

*Johnson* at ¶ 32. " 'It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment.' " *Curry* at ¶ 30, quoting *Jackson* at 307, 760 N.E.2d 24. "The act must be so divergent that it severs the employer-employee relationship." (Internal quotations and citations omitted.) *Wee Care Child Ctr., Inc. v. Ohio Dept. of Job & Family Servs.,* 10th Dist. Franklin No. 13AP-1004, 2014-Ohio-2913, ¶ 28. "One acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm." *Moss v. Lorain Cty. Bd. of Mental Retardation,* 185 Ohio App.3d 395, 2009-Ohio-6931, 924 N.E.2d 401, ¶ 19 (9th Dist.).

*Thomas v. Bauschlinger,* 9th Dist. Summit No. 27240, 2015-Ohio-281, ¶ 25. *Coterel* at ¶ 14, 15, 16-17:

{¶ 34} Having reviewed the pleadings, and construing all material allegations and all reasonable inferences therefrom in favor of Powlette, we conclude that the facts herein did not support a conclusion that Carlson acted manifestly outside the scope of his employment as the Deputy Director of Community Development and in his role as the Miami Township Zoning Inspector, or that he acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. In other words, Carlson was entitled to immunity pursuant to R.C. 2744.03(6).

{¶ 35} Powlette's complaint makes clear that he pursued his malicious prosecution

claim against Carlson in Carlson's official capacity as a Miami Township zoning code enforcement officer. Although this Court reversed Powlette's misdemeanor conviction, we cannot reasonably conclude that Carlson's conduct in swearing to the second complaint against Powlette rose to the level of any of the egregious conduct defined above in *Coterel*. Powlette's property is zoned for agricultural use only, and "a 'bed and breakfast' is not a permitted use in an agricultural district." *Powlette*, 2020-Ohio-5212, 162 N.E.3d 172, at ¶12 (2d Dist.). There was evidence from a July 9, 2018 BZA hearing, involving a "different issue," that Powlette intended to operate a bed and breakfast on his property. *Id.* at ¶ 21. After the conditional dismissal of the first complaint, at which time Powlette was ordered by the court to cease advertising for a bed and breakfast and not to operate a bed and breakfast on the property without a conditional use certificate, Powlette failed to comply with the advertising condition. As this Court determined, there "appears to be no dispute * * * that the Facebook and website references to 'Stoney Hill Bed and Breakfast' continued to exist after the starting date alleged in the refiled complaint." *Id.* at ¶ 15.

{¶ 36} In our prior decision "the *narrow* issue [was] whether the State proved beyond a reasonable doubt that Powlette [actually] '*used*' his property as a 'bed and breakfast' without a conditional use permit." (Emphasis and bracketed word added.) *Id.* at ¶ 24. However, the distinct issue presented in this case is Carlson's conduct in his capacity as a zoning enforcement officer. We conclude that Powlette's continued advertising, coupled with his expressed intent to operate a bed and breakfast on his property, supported an inference of "use" for purposes of Carlson's conduct in turning

over materials to the prosecutor. We agree with the trial court's determination that the reversal of Powlette's conviction on appeal "had nothing to do with the state of mind of Alex Carlson in referring the issue to the prosecutor representing the township. It was based on the appellate court's reading of the zoning code differently than how the zoning inspector read it."

{¶ 37} Powlette's assertion in paragraph 16 of his amended complaint that Carlson filed charges in retaliation for Powlette's public comment to the media after the township's first complaint was conditionally dismissed is mere speculation and is not supported by any factual allegations in the complaint, such as that Carlson was even aware of the comment. As Carlson notes, "[i]n general, the decision whether to prosecute a criminal offense is left to the discretion of *the prosecutor*." (Emphasis added.) *State v. Bakhshi,* 2d Dist. Montgomery No. 25585, 2014-Ohio-1268, ¶ 41, citing *State v. Turner*, 192 Ohio App.3d 323, 330, 2011-Ohio-393, 949 N.E.2d 57 (2d Dist.). Further, we cannot conclude that Carlson failed to investigate, given the evidence presented at trial and this Court's conclusion that Powlette continued to advertise in violation of the court's order to cease doing so within 10 days.

{¶ 38} While Powlette alleged that Carlson had engaged in intentional and malicious conduct, we cannot conclude that Carlson acted with a willful and intentional design to do injury to Powlette, as malicious purpose is defined in the context of political subdivision immunity. We further cannot conclude that Carlson acted in bad faith of the nature of fraud. Under the circumstances and conditions presented, we cannot conclude that Carlson was conscious that his conduct would result in injury to Powlette or failed to

exercise any care whatsoever such that wanton misconduct was demonstrated. We similarly cannot conclude that Carlson acted recklessly or exhibited an indifference to a known or obvious risk of harm to Powlette. In other words, we conclude that Carlson acted at all times to enforce the Miami Township Zoning Resolution and not outside the scope of his employment.

{¶ 39} Pursuant to our de novo review, we find that Carlson was entitled to statutory immunity. Accordingly, Carlson was entitled to judgment on the pleadings. Powlette's assignment of error is overruled.

{¶ 40} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Kent J. Depoorter
Edward J. Dowd
Christopher T. Herman
Nathaniel W. Rose
Hon. Richard S. Skelton