[Cite as *Curtis v. Edsell*, 2024-Ohio-3420.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

JENNIFER LAYNE GRISSOM CURTIS, :
et al. :
: C.A. No. 29994
Appellees :
: Trial Court Case No. 2023 MSC 00102
v. :
: (Appeal from Common Pleas Court-
DERF D. EDSELL, et al. : Probate Division)
:
Appellant :

. . . . . . . . . . .

O P I N I O N

Rendered on September 6, 2024

. . . . . . . . . . .

JOHN H. STACHLER, SEAN H. HARMON, & ADAM M. PITCHEL, Attorneys for Appellant

GARY J. LEPPLA, Attorney for Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Derf D. Edsell appeals from a declaratory judgment that his sister's children were vested beneficiaries of The Mary Joan Layne Family Trust and that he was limited in his ability to sell the residential property for which he was granted

a life estate. Edsell challenges these conclusions and asserts that the probate court improperly considered extrinsic evidence in reaching its conclusions. For the following reasons, the probate court's judgment is affirmed in part and reversed in part.

## I. Facts and Procedural History

{¶ 2} Mary Joan Layne was the mother of Derf D. Edsell and Bambi L. Grissom. Plaintiffs-appellees Jennifer Layne Grissom Curtis, Elizabeth Nichole Yearsley, and James Christopher Grissom are Grissom's children (collectively, "the Grandchildren").

{¶ 3} On December 12, 2012, Layne created a revocable trust named The Mary Joan Layne Family Trust. Layne transferred her residential property located at 1521 Langdon Drive in Centerville, as well as her personal property, into the trust. The terms of the trust established Layne as the initial trustee and beneficiary.

{¶ 4} Layne died on January 27, 2021, making the trust irrevocable. Grissom died approximately six weeks later on March 11, 2021, at the age of 67. Defendant-appellee William House was appointed as successor trustee on August 9, 2021, and is the current acting successor trustee of the trust. After Layne and Grissom's deaths, a dispute arose between Edsell and the Grandchildren regarding his ability to sell the residential property, for which he was granted a life estate under the trust. The Grandchildren also challenged House's ability to serve as successor trustee.

{¶ 5} On February 24, 2023, the Grandchildren filed a declaratory judgment action in the probate court, seeking an interpretation of the trust agreement. They alleged that their uncle had "expressly claimed that pursuant to the terms of the Mary Joan Layne Family Trust he has the right, despite the fact that he only holds a life estate in real estate

owned by Mary Joan Layne during her lifetime, to sell the entire fee simple value of the real estate in any fashion, for any amount of money, regardless of the rights of additional beneficiaries." Complaint, ¶ 10.

{¶ 6} The Grandchildren requested a declaration regarding the proper interpretation of the trust in several respects, including that: (1) Edsell had no right to sell the real estate in which he held a life estate without their participation and only upon terms equaling the fair market value of the property; (2) he had "no power individually to sell property"; (3) a national bank or trust company must be a successor trustee; (4) the Grandchildren had succeeded to Grissom's rights under trust; (5) Edsell had a duty to pay property taxes and insurance premiums on the real estate from his personal funds; (6) the trustee had no duty to continue to pay and maintain a life insurance policy on Edsell's life; and (7) the trustee had a duty to gather and liquidate all financial assets. The Grandchildren also asked for "further relief in terms of distribution of all assets, and all other items associated with" the trust, plus attorney fees, interest, and costs. They attached to their complaint copies of the trust agreement and a corrective quit-claim deed, which transferred the real estate into the trust.

{¶ 7} Edsell denied the allegations and counterclaimed for a declaratory judgment with different interpretations of the trust. With respect to the Grandchildren, he asked the court to declare that they were not beneficiaries of the trust and that he owed "no fiduciary duty whatsoever to [the Grandchildren], regardless of whether [they were] entitled to a portion of the Real Estate." As to the real estate itself, he sought declarations that: (1) he was "authorized to dispose of the Real Estate upon any terms,

at any price and to any person, including himself, with or without the consent of [the Grandchildren]"; (2) he had "no duty to sell the Real Estate pursuant to any terms other than those to be determined by [him], in his absolute discretion; and (3) the trustee "must comply with the disposition of the Real Estate, pursuant to the terms dictated by [Edsell.]" Edsell attached the trust agreement, as well as copies of Layne's death certificate and Grissom's obituary. The Grandchildren filed an answer to the counterclaims asking that they be dismissed.

{¶ 8} House, who was sued in his capacity as successor trustee, filed an answer to the Grandchildren's complaint, denying the allegations and asking that the Grandchildren's complaint be dismissed. House stated, among his defenses, that they were not beneficiaries of the trust and lacked standing to assert their claims.

{¶ 9} Edsell subsequently sought judgment on the pleadings on his counterclaims. The Grandchildren responded with a motion for summary judgment, which was supported by an affidavit from Attorney Richard Boucher, the drafter of the trust agreement.

{¶ 10} In ruling on the motions, the probate court indicated that it "did not rely on the affidavit because trust construction was manageable within the four (4) corners of the document." The court noted, however, that had it done so, the affidavit would have been credible and would have "carr[ied] heavy weight on summary judgment."

{¶ 11} As for the disputed issues, the court construed Section 2.9 of the trust to permit Edsell to "choose if and when the life estate in the real property would be sold, with net proceeds to be placed in Trust to be administered by the Successor Trustee." Edsell was required to pay all maintenance on the property, including upkeep, repairs, property

taxes, insurance, and related expenses. The court rejected Edsell's interpretation that he could sell the property to himself at any price he dictated. Rather, the probate court stated

> The Court does not see provisions that permit Derf to trump the Successor Trustee (who has fiduciary/trustee obligations to others, besides Derf), such that Derf can simply sell the real property to himself at any price Derf dictates. Additionally, Derf would not be able to sell/convey more than the interest that has been granted to him. (i.e. nothing greater than a life estate) The bottom line is that a trustee has numerous duties including loyalty, impartiality, and prudent administration, among others. See R.C. 5808.01 through 5808.04. Derf cannot require the Successor Trustee to shirk fiduciary duties and assume such liability. As such an interpretation would be contrary to public policy.

Nov. 30, 2023 Decision, p. 9.

{¶ 12} The probate court further determined that the Grandchildren were vested beneficiaries in the trust. It "construe[d] the status of the 1521 Langdon Drive property and the Lane Trust as holding Bambi Grissom's one-half remainder of the real property in trust for the benefit of Plaintiffs and the other half for Derf Edsell, in trust."

{¶ 13} As to the other issues raised in the complaint, the probate court declined to remove House as successor trustee and found that the issue of whether a national bank or trust company must serve as successor trustee was not ripe. The court further stated that it could not opine on any hypothetical sale of the real estate by Edsell. Finally, the

court declined to render an order related to the Grandchildren's request for an order that the successor trustee gather and liquidate financial assets; the court noted that no evidence had been presented regarding these assets.

{¶ 14} Edsell appeals from the probate court's judgment, raising four assignments of error.   We will address them in an order that facilitates our analysis.

{¶ 15} Prior to briefing, the Ohio Department of Medicaid ("ODM") sought to intervene in the appeal because Grissom, a vested trust beneficiary, had received Medicaid assistance during her lifetime and ODM had an obligation to seek recovery of those payments.   We overruled the motion to intervene but permitted ODM to file an amicus curiae brief.

## II. Relevant Legal Standards

{¶ 16} The parties' dispute was before the probate court upon opposing claims for declaratory judgment.   Under R.C. 2721.05, any person with an equitable interest in a trust may have a declaration of rights or legal relations to (1) "ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;" (2) direct the trustees or other fiduciaries to do or abstain from doing any particular act in their fiduciary capacity; and/or (3) determine any question arising in the administration of the trust, including questions of construction of the trust document or other writings.   *See* R.C. 2721.05.

{¶ 17} The probate court granted the Grandchildren's summary judgment motion. Under Civ.R. 56(C), summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one

conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997); *Surber v. Hines*, 2024-Ohio-95, ¶ 10 (2d Dist.). Appellate review of summary judgment is de novo. *Gilliland v. Adams*, 2023-Ohio-3083, ¶ 24 (2d Dist.).

{¶ 18} The probate court denied Edsell's Civ.R. 12(C) motion for judgment on the pleadings. "Unlike a Civ.R. 56 motion for summary judgment, which authorizes the court to evaluate evidentiary materials submitted for their probative worth, Civ.R. 12(C) imposes a structural test: whether on their face the pleadings foreclose the relief requested." *Greenview Local School Dist. Bd. of Edn. v. Staffco Constr., Inc.*, 2016-Ohio-7321, ¶ 12 (2d Dist.). "Determination of a motion for judgment on the pleadings is restricted solely to the allegations in the pleadings and any writings attached to the complaint." *Offil v. State Farm Fire & Cas. Co.*, 2012-Ohio-6225, ¶ 14 (2d Dist.); *Fabian v. Kettering*, 2024-Ohio-360, ¶ 10 (2d Dist.). Because a motion for judgment on the pleadings presents only questions of law, our review is de novo. *Powlette v. Carlson*, 2022-Ohio-3257, ¶ 20 (2d Dist.).

### III.   Consideration of Extrinsic Evidence

{¶ 19} In his first assignment of error, Edsell claims that the probate court erred by weighing the credibility of the extrinsic evidence without making a finding of ambiguity in the terms of the trust. Edsell argues that while the probate court claimed to consider only the trust agreement itself, it repeatedly noted that Boucher's affidavit supported its conclusions. Edsell thus asserts that the probate court improperly considered extrinsic evidence without finding any ambiguity in the agreement.

{¶ 20} The determination of the meaning of provisions of a trust, including whether individuals are beneficiaries under the trust, is a question of law. *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 14; *McCoy v. Witzleb*, 2005-Ohio-6678, ¶ 10 (2d Dist.) ("Issues concerning the interpretation of the provisions of the trust, such as whether an individual is a beneficiary . . . , clearly fall within the province of the court."), citing *In re Trust of Brooke*, 1998-Ohio-185.

{¶ 21} When interpreting a trust, we follow the same principles that apply when interpreting contracts. *Arnott* at ¶ 14. Our purpose when examining a trust is to give effect to the settlor's intent, which is presumed to reside in the terms of the trust agreement. *See id.*; *Domo v. McCarthy*, 66 Ohio St.3d 312 (1993), paragraph one of the syllabus. ("A court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent."). When a trust is unambiguous, we derive its meaning from its language alone, without regard to extrinsic evidence. *See McGinnis v. Conley*, 2024-Ohio-482, ¶ 12 (2d Dist.).

{¶ 22} In this case, the probate court found that the meaning of the Mary Joan Layne Family Trust could be determined from the language of the trust itself, without resorting to extrinsic evidence (namely Boucher's affidavit). The court's analysis further reflects that it did not improperly consider extrinsic evidence to interpret what it found to be an unambiguous document. Although the probate court noted that Boucher's affidavit supported its conclusions, it referenced the affidavit as alternative reasoning in the event that an appellate court determined that the trust agreement was ambiguous. There is no indication that the court's interpretation of the trust language was based on evidence

outside the four corners of the document.

**{¶ 23}** Edsell's first assignment of error is overruled.

### IV. Edsell's Right to Sell Langdon Property

**{¶ 24}** Edsell's fourth assignment of error states that the probate court "erred by limiting the power of sale granted to [him] in Section 2.9 of the trust." He contends that the trust agreement conferred two things upon him: (1) a life estate in the Langdon Drive property, and (2) unrestricted power of sale over the entire property, not just the life estate.

**{¶ 25}** Section 2.9 reads:

Successor Trustee shall immediately transfer, convey, and deliver a life estate in and to the real estate commonly known as and located at 1521 Langdon Drive, Centerville, Montgomery County, Ohio 45459 to Grantor's son, **DERF D. EDSELL**, to have and to hold for and during the term of his life. **DERF D. EDSELL** shall pay all charges incident in maintaining said real estate including, without limitation, (1) upkeep; (2) maintenance; (3) repairs; (4) assessments; (5) insurance premiums; (6) taxes and/or any other expenses and/or maintenance necessary to prevent any waste or deterioration to or of said real estate. *Successor Trustee shall authorize Grantor's son, **DERF D. EDSELL**, in his absolute discretion to sell said real estate at such time, at such price, to such person and upon such terms, including credit, as he shall deem advisable. In the event of a sale of said real estate by Grantor's son, **DERF D. EDSELL**, the net proceeds thereof shall be held and administered by Successor Trustee as hereinbelow set*

*forth.* In the event Grantor's son, **DERF D. EDSELL**, elects not to exercise a life estate, elects to terminate his the [sic] life estate; [sic] does not elect to sell the real estate during his lifetime, or upon the death of Grantor's son, **DERF D. EDSELL**, the rest, residue and remainder of the real estate commonly known as and located at 1521 Langdon Drive, Centerville, Montgomery County, Ohio 45459 shall be held and administered by the Successor Trustee as hereinbelow set forth.

(Emphasis added.)

{¶ 26} It is undisputed that Section 2.9 granted Edsell a life estate in the Langdon Drive property upon Layne's death. As correctly stated by the probate court, upon obtaining the life estate, Edsell became responsible for maintaining the physical condition of the property, as well as paying for assessments, insurance premiums, taxes "and/or any other expenses and/or maintenance necessary to prevent any waste or deterioration to or of said real estate."

{¶ 27} Section 2.9 next instructed the successor trustee to authorize Edsell, "in his absolute discretion to sell said real estate at such time, at such price, to such person and upon such terms, including credit, as he shall deem advisable." If Edsell sold the property, the successor trustee had the responsibility to distribute the net proceeds as directed in Sections 2.10 to 2.19. Section 2.9 also identified other circumstances that terminate the life estate. If any of those occurred, the successor trustee again was responsible for administering the remainder interests in accordance with Sections 2.10 to 2.19.

**{¶ 28}** Edsell asserts that Section 2.9 granted him unfettered discretion to sell the Langdon Drive property, in fee simple. We agree that the trust permitted him to sell the entire real estate. Section 2.9 granted Edsell a life estate with the power of sale. *Accord Johnson v. Johnson*, 51 Ohio St. 446 (1894); *Weygandt v. Ward*, 2010-Ohio-2015 (9th Dist.). Nothing in the plain language of Section 2.9 limited Edsell's power to sell to only his life estate.

**{¶ 29}** Nearly 165 years ago, the Ohio Supreme Court interpreted a power of sale provision in a will as authorizing the sale of the entire fee, not just a life estate interest. *Bishop v. Remple*, 11 Ohio St. 277 (1860). The Supreme Court explained:

> The testator, in one clause of his will, devises all his property, real or personal, which may remain after the payment of his debts, to his wife, with full power to have and to hold, to sell and convey the same, during her natural life. In the next clause he gives a legacy of $100, to be paid after the death of his wife, out of any moneys or effects of his estate that may then remain. We think that by the first clause the wife is to have power to sell and convey the property, and not a mere life estate in that property. The first object of the bounty of the testator was his wife, and should she require it during her life, his whole estate, after the payment of debts, was placed at her disposition, not merely to have and to hold, but to sell and convey. The nature of the property may have been such, that the only beneficial use would arise from a sale and conveyance. The payment of the legacy is postponed until the death of his wife, and is then conditional.

It is to be paid out of any moneys or effects of his estate that may then remain. If the wants of the wife, during her life, exhausted the property, the payment of the legacy could not be made. If there remained, at the death of the wife, any money or effects devised under the will, a trust would attach to them for the payment of the legacy. This view, we think, gives effect to each clause of the will, and shows that [the wife] had power, during her life, to sell and convey the land, not merely for her life, but in fee.

*Id.* at 280-281.

{¶ 30} Section 2.9 differs significantly from the will in *Bishop* regarding the disposition of sale proceeds and the remainder interests in the real property. Nevertheless, *Bishop* supports a conclusion that the Layne Family Trust could give Edsell a life estate with the authority to sell the entire real estate, not just his life estate interest. Here, the plain language of Section 2.9 reflected an intention that Edsell have the authority to sell the entire Langdon Drive property, with proceeds to be split between him and his sister as directed by Sections 2.10 to 2.19. Accordingly, the probate court erred in interpreting Section 2.9 of the Mary Joan Layne Family Trust as limiting Edsell to selling only his life estate interest in the Langdon Drive property.

{¶ 31} Edsell's power to sell is not unlimited, however. Section 2.9 authorizes Edsell to *sell* the Langdon Drive property; it does not authorize Edsell to dispose of the real estate under terms that would constitute a gift. *See, e.g., Johnson* at paragraph two of the syllabus*; Rippel v. Rippel*, 82 N.E.2d 140, 142-143 (2d Dist. 1948) (where a will gave a life tenant "full power and authority to sell and convey any part of all of said real

estate and personal property at any time during his natural lifetime in such manner as he may desire," the will did not authorize the life tenant to convey the property by gift); *Ditto v. Jent*, 2006-Ohio-6929, ¶ 11 (3d Dist.) (husband's will granted widow a life estate with power of disposition, but not by gift). Moreover, "a person who receives a life estate in real property with a power to sell is 'by implication, a quasi trustee for those in remainder.' " *Weygandt* at ¶ 12, quoting *Johnson* at paragraph two of the syllabus. Consequently, the life tenant with power of sale cannot "go beyond what would be regarded as good faith towards the remainder-men." *Johnson* at 461. However, we read nothing in Section 2.9 to suggest that Edsell would be required to consult with the Grandchildren or the successor trustee regarding the terms of any proposed sale, as the Grandchildren asserted in their complaint.

{¶ 32} Edsell's fourth assignment of error is overruled in part and sustained in part.

## V. The Grandchildren's Status as Beneficiaries

{¶ 33} Edsell's second and third assignments of error concern whether the Grandchildren are beneficiaries of the trust. He first claims that the probate court erred in interpreting the trust such that it caused the interest of a vested beneficiary (Grissom) to lapse. He next asserts that the probate court erred by declaring the Grandchildren to be vested beneficiaries of the trust.

{¶ 34} In their appellate brief, the Grandchildren claim that Edsell lacks standing to argue that Grissom's interest passed to her estate rather than her children. However, Edsell's argument does not assert a claim on Grissom's estate's behalf. Rather, he

contends that the Grandchildren themselves cannot challenge his interpretation of the trust because Grissom's interest in the trust had passed to her estate and not to them. Whether the Grandchildren are beneficiaries is properly before us.

### A. Ohio's Trust Anti-lapse Statute

{¶ 35} We begin with R.C. 5808.19, the trust anti-lapse statute, which is applicable to all trusts that become irrevocable on or after March 22, 2012. "A significant impetus for Ohio's new trusts antilapse statute was a desire to make lapse and antilapse rules that had long been applicable to wills also apply to revocable trusts, particularly since revocable trusts are so commonly used as substitutes for wills. New § 5808.19, however, is not limited to revocable trusts, but also applies to irrevocable trusts." Newman, *When the Beneficiary Predeceases: A Primer on Ohio's Wills and Trusts Antilapse Statutes*, (2017).

{¶ 36} R.C. 5808.19(B) sets forth two rules governing future interests under the terms of a trust, unless a contrary intent appears in the instrument creating the trust. *See* R.C. 5808.19(B)(2). First, a future interest under the terms of a trust is contingent on the beneficiary surviving the distribution date by at least 120 hours. R.C. 5808.19(B)(2)(a). "In effect, new § 5808.19 converts what was a vested remainder under prior law (subject, in the case of a revocable trust, to divestment by the settlor's exercise of the reserved power to revoke or amend) to a contingent remainder conditioned on the beneficiary surviving the distribution date by at least 120 hours." Newman, 27 No. 4 OHPRLJ-NL 4. Second, if the beneficiary of the future interest does not survive the distribution date by 120 hours and the relationship between the beneficiary and the transferor meets certain

criteria, the statute sets forth substitute beneficiaries. R.C. 5808.19(B)(2)(b).

{¶ 37} R.C. 5808.19(A)(6) defines a "future interest under the terms of a trust" to mean "a future interest that was created by a transfer creating a trust or a transfer to an existing trust, or by an exercise of a power of appointment to an existing trust, that directs the continuance of an existing trust, designates a beneficiary of an existing trust, or creates a trust." In this case, the "transferor" means the settlor/grantor, Layne. *See* R.C. 5808.19(A)(10)(c). "Beneficiary" means "the beneficiary of a future interest and includes a class member if the future interest is in the form of a class gift." R.C. 5808.19(A)(1).

{¶ 38} The term "distribution date" means "the time when the future interest is to take effect in possession or enjoyment." R.C. 5808.19(A)(4). For an immediate gift under a trust, the distribution date is the time of the grantor's death. *See* Restatement (Third) of Property (Wills & Don. Trans.) § 15.1 (2011). In contrast, "[t]he typical postponed class gift takes effect on the termination of a preceding life estate or a lifetime income interest in a trust." *Id.*

{¶ 39} In its appellate brief, ODM quotes Example 7 from Alan Newman's article discussing R.C. 5808.19. That example states: "S created a revocable trust for S for life. The trust instrument provided that at S's death, the assets remaining in the trust were to be distributed to R. Thus, the date of S's death would be the 'distribution date' under the statute (because that is when R's future interest would take effect in possession or enjoyment). Unless the instrument expresses a contrary intent, R's future interest is contingent on R surviving S by at least 120 hours. If R does not do so, R's future interest

fails." Newman, 27 No. 4 OHPRLJ-NL 4. Example 7 illustrates the effect of R.C. 5808.19(B) on an immediate gift.

{¶ 40} We also find Example 8 to be relevant. It states: "O created a revocable trust for O for life; then for O's spouse, S, for S's life; with the remainder to be distributed at S's death to O's child, C. O died, survived by S and C. Unless the instrument expresses a contrary intent, C's future interest is contingent on C surviving S's death (the distribution date) by at least 120 hours. If C does not do so, C's future interest fails." Example 8 illustrates the effect of R.C. 5808.19 where there is an immediate gift (S's life estate) and a postponed gift (C's remainder interest).

### B. Application to the Terms of the Mary Joan Layne Family Trust

{¶ 41} Section 2 of the Mary Joan Layne Family Trust governed the disposition of the trust estate upon Layne's death. Sections 2.1 to 2.8 required the immediate distribution of specific gifts to Edsell and Grissom. Specifically, upon Layne's death, Edsell was to receive oil lamps (2.1), the Hibel picture of a boy (2.4), a Movado watch (2.5), a surround sound and cabinet (2.6), a grandfather clock (2.7), and a Panasonic television (2.8). Grissom was to receive the Hibel cookbook (2.2) and Hibel picture of a girl (2.3). Section 2.9, quoted above, addressed the disposition of the Langdon Drive property.

{¶ 42} Section 2.10 provided that the "rest, residue and remainder of the Trust Estate, whether the same be real, personal, or mixed," was to be held and administered by the successor trustee for the use and benefit of Edsell and Grissom in accordance with the provisions that followed. In the context of wills, the phrase "rest, residue and

remainder" generally indicates a residuary clause, "that is, a clause which disposes of that part of the testator's estate which has not been specifically devised and bequeathed previously." *In re Estate of Line*, 122 Ohio App.3d 387, 391 (12th Dist. 1997). Sections 2.11 to 2.19 set forth the procedures for administering the residue of Layne's trust estate.

### 1. The Residual Trust Estate

{¶ 43} To resolve whether the Grandchildren were beneficiaries under the trust, we focus first on Sections 2.11 to 2.13 and Sections 2.17 to 2.18. They state:

2.11 Successor Trustee shall immediately divide the Trust Estate into two (2) equal shares. Each share shall constitute and be held, administered and distributed by the Successor Trustee as a separate trust.

2.12 One equal share shall be set aside for the benefit of each of Grantor's children, who may then be living and shall then constitute the Trust Estate of each such child's trust.

2.13 One equal share shall be set aside for the benefit of the issue of each deceased child of Grantor then living, per stirpes and not per capita, and shall constitute the Trust Estate of the trust for such issue.

. . .

2.17 When each child of Grantor attains the age of sixty-five (65) years, the Successor Trustee shall distribute to such child all of his or her share of the Trust Estate.

2.18 If any child for whom share of the Trust Estate has been set aside should die prior to attaining the age of sixty-five (65) years, then on the

death of such child the Successor Trustee shall distribute all of the balance of such deceased child's Trust Estate to his issue then living, per stirpes and not per capita. . . .

{¶ 44} These terms were clear and unambiguous. When Layne created the Mary Joan Layne Family Trust, her children were given a future interest in the trust property. Upon Layne's death, the "rest, residue and remainder" of the trust estate was to be divided immediately into two equal shares, which would then constitute two separate trusts (2.11). If Edsell and/or Grissom were alive, they would get one of those shares (2.12), and the successor trustee was to use the two separate trusts for their benefit (*see* 2.14, 2.15, 2.16). However, if either Edsell or Grissom were deceased when Layne died, that deceased child's share would go to that child's issue per stirpes (2.13). The time of Layne's death was the "distribution date" for purposes of the immediate gifts in Layne's trust estate.

{¶ 45} In this case, both Edsell and Grissom were alive when Layne died. Although Grissom died a matter of weeks after Layne, it was beyond the 120 hours (five days) provided for in R.C. 5808.19, the trust anti-lapse statute, rendering Section 2.13 inapplicable. Accordingly, Edsell and Grissom each were to receive one-half of Layne's residual estate, held in a separate trust for each of their benefits.

{¶ 46} Sections 2.17 and 2.18 then addressed when their respective trusts were to be distributed to them. Section 2.17 required distribution of the children's (Edsell's or Grissom's) trust estates upon reaching the age of 65. Grissom was alive and over the age of 65 following Layne's death. Accordingly, she was entitled to receive a full

distribution of her share of the residual trust estate prior to her death. Section 2.18, which required the distribution of a deceased child's trust estate to that child's issue, applied only if Edsell or Grissom died more than 120 hours after Layne but prior to turning 65 years old. Because Grissom had attained the age of 65, Section 2.18 was not applicable to her.

{¶ 47} The trust agreement was thus clear that the Grandchildren were not beneficiaries of the trust that was created for Grissom upon the division of the Mary Joan Layne Family Trust into two separate trusts. Regardless of whether the successor trustee complied with his obligations under Layne's trust, the plain language of the trust reflected that, after the division of Layne's residual trust estate into two separate trusts for Grissom and Edsell, Grissom's share should have been distributed to her and no longer held in trust.

{¶ 48} To the extent that the probate court concluded that the Grandchildren were to receive, in trust, Grissom's share of Layne's residual trust estate should Grissom "not survive the full Trust administration," that interpretation was contrary to the plain language of the trust. Again, the Grandchildren were to receive Grissom's share in trust only if Grissom predeceased Layne or did not survive Layne by 120 hours. Upon Grissom's death, her share of Layne's residual trust estate was subject to distribution through testate or intestate succession.

**2. The Remainder Interests in the Langdon Property**

{¶ 49} The question still remains whether the remainder interests in the life estate were to be addressed in the same manner as Layne's residual trust estate. To resolve

this issue, we look to Section 2.9 and the trust anti-lapse statute.

**{¶ 50}** Section 1 of the Mary Joan Layne Family Trust gave Layne control over the trust estate, including the Langdon Drive property, during her lifetime. Under the plain language of Section 2.9, Layne's death triggered the creation of Edsell's life estate and the remainder interests in the Langdon Drive property. The distribution date for Edsell's life estate was the time of Layne's death, and Edsell vested in the life tenancy upon surviving Layne by at least 120 hours.

**{¶ 51}** Section 2.9 set forth a specific disposition of the Langdon Drive property, but it provided that the remainder of the Langdon Drive property should be addressed in the same manner as Layne's residual estate. Under Sections 2.11 and 2.12, having survived Layne by 120 hours, Edsell and Grissom each received a remainder interest in the Langdon Drive property following Layne's death. Due to R.C. 5808.19(B)(2)(a), a remainder interest in real estate is contingent on a beneficiary surviving the distribution date by at least 120 hours. As illustrated in Newman's Example 8, the distribution date for the remainder interest in a life estate is the termination of the life estate, not the death of the grantor. Accordingly, Edsell and Grissom each obtained a remainder interest in the Langdon Drive property, contingent upon surviving until the termination of the life estate. Because Grissom was more than 65 years old, the successor trustee was further required to distribute the contingent remainder interest to her. Consequently, the contingent remainder interest no longer should have been held by the successor trustee in trust for her benefit.

**{¶ 52}** At this point, Grissom was in the same posture as if Layne had simply

granted a life estate to Edsell with a remainder interest to her. Nevertheless, during the final weeks of her life, Grisson continued to be a beneficiary of a future interest under the terms of a trust (the remainder interest created by the Mary Joan Layne Family Trust) with respect to the Langdon Drive property.

{¶ 53} Because Grissom is now deceased, she necessarily will not survive the distribution date (the termination of the life estate) by 120 hours. However, R.C. 5808.19(B)(2)(b)(i) provides, in relevant part:

> (b) If a beneficiary of a future interest under the terms of a trust does not survive the distribution date by at least one hundred twenty hours and if the beneficiary is . . . a descendant of a grandparent of the transferor, either of the following applies:
>
> (i) If the future interest is not in the form of a class gift and the deceased beneficiary leaves surviving descendants, a substitute gift is created in the beneficiary's surviving descendants. The surviving descendants take, per stirpes, the property to which the beneficiary would have been entitled had the beneficiary survived the distribution date by at least one hundred twenty hours.

"Surviving descendants" are descendants who survive the distribution date by at least 120 days. R.C. 5808.19(B)(1)(b).

{¶ 54} Because Grissom's contingent remainder interest will fail and Layne's trust agreement did not provide for that circumstance, R.C. 5808.19(B)(2)(b)(i) creates a substitute gift in Grissom's surviving descendants. Because the distribution date for the

remainder interest in the Langdon Drive property has not yet occurred and it is uncertain which of the Grandchildren will be a "surviving descendant" when it does, any interest they now hold under R.C. 5808.19(B) is also contingent. Regardless, by operation R.C. 5808.19, the Grandchildren are substituted for Grissom as beneficiaries of her contingent remainder interest in the Langdon Drive property.

{¶ 55} In arguing that the Grandchildren are not trust beneficiaries, Edsell relies on *McCoy v. Witzleb*, 2005-Ohio-6678 (2d Dist.), which predates the enactment of the trust anti-lapse statute. In that case, Hazel McCoy created an irrevocable trust and placed her residential property into it. Under the terms of the trust agreement, Hazel's son, Robert, received a life estate in the property after she died. Upon his death, the remainder of the estate was to be distributed under the terms of section 4.1(c) of the trust, which read: "The rest and residue of the Trust Estate to Grantor's children, namely, ROBERT MELVIN McCOY, KEITH McCOY, and THELMA L. WITZLEB to be divided among them equally or, if any of Grantor's children have predeceased her, then the share of such predeceased child shall be distributed to his or her issue, per stirpes."

{¶ 56} After Robert died, Lisa Marie McCoy, both individually and as administrator of Robert's estate, brought a declaratory judgment action seeking, in part, an order that she was Robert's child and that she or Robert's estate was entitled to receive a one-third share of the trust assets, including the real estate. The probate court found in Lisa Marie's favor, concluding that Robert had obtained a one-third share of the trust estate when he survived his mother and, as such, that he was entitled to a one-third share of all the trust estate, including the real estate, when it was to be distributed after his death.

On appeal, we agreed with the probate court, stating in part:

Here, paragraph 4.1(c) of the trust instrument granted Mrs. McCoy's three children – Keith, Thelma, and Robert – an equal one-third share remainder interest in the trust estate. Thus, at the instant of creation of the trust, Keith, Thelma and Robert obtained a vested equitable interest in the remainder, subject to defeasance in whole or in part by the exercise of the power to revoke or to modify. *See Smyth v. Cleveland Trust Co.* (1961), 172 Ohio St. 489, 501-02, 179 N.E.2d 60, paragraph one of the syllabus. The trust was neither revoked nor amended during Mrs. McCoy's lifetime. Thus, at the time of Mrs. McCoy's death, the children's vested one-third remainder interest became indefeasible.

Appellants argue that Robert did not predecease his mother and, therefore, the phrase "then the share of such predeceased child shall be distributed to his or his issue, per stirpes" does not apply and his estate should receive no interest in the real property. We agree that because Robert survived his mother, the phrase does not apply. However, Appellants are incorrect that his estate cannot receive a share of the remainder as a result. Remainders are descendible, devisable, and alienable in the same manner as estates in possession. R.C. 2131.04; *First Nat'l Bank of Cincinnati v. Tenne*y (1956), 165 Ohio St. 513, 519, 138 N.E.2d 15.

The pivotal question, therefore, is whether Mrs. McCoy manifested

an intent for the real estate at issue to be distributed only to those of Mrs. McCoy's children who survived after Robert's death. Upon review of the trust instrument, she did not. According to paragraph 4.1(b), upon Robert's death, the real estate was to be "distributed under the terms stated in paragraph 4 .1c." The only reasonable interpretation of this phrase is that, upon Robert's death, the real estate would become part of the remainder to be distributed according to paragraph 4.1(c). As stated above, Robert had a vested one-third remainder interest in the trust estate which was descendible and devisable. Accordingly, although Robert was necessarily deceased when the real estate was to be distributed, the trial court properly concluded that his estate was entitled to a one-third share when it was distributed under paragraph 4.1(c).

*McCoy* at ¶ 25-27.

{¶ 57} *McCoy's* utility is affected by the subsequent enactment of R.C. 5808.19, but it remains instructive in limited respects. Both Robert and Grissom were alive when their mothers died but were deceased when questions arose about their remainder interests in real property. Unlike Robert, Grissom did not obtain a vested remainder interest in the real estate upon her mother's (the grantor's) death; rather, due to R.C. 5808.19, Grissom's remainder interest was contingent upon surviving the termination of the life estate. Nevertheless, the language of the trust in *McCoy* demonstrated an intent for the creation of Robert's remainder interest to occur when Robert survived his mother, not when the life estate ended. The structure of Section 2.9 and the sections that follow

reflect a similar intent.

{¶ 58} Edsell argues that *McCoy* stands for the proposition that, upon the death of a vested trust beneficiary, the trust interest of that beneficiary passes to the beneficiary's estate. This case is factually distinguishable, as Grissom held only a contingent remainder interest, not a vested remainder interest, in the real estate. We recognize that remainders, whether vested or contingent, generally are descendible, devisable, and alienable in the same manner as estates in possession. R.C. 2131.04. However, Ohio's trust anti-lapse statute now addresses the disposition of a contingent future interest under the terms of a trust where the beneficiary does not survive the distribution date. *McCoy* does not control the circumstance before us. Rather, under R.C. 5808.19, the Grandchildren are substituted for Grissom as contingent remainder beneficiaries and, consequently, the remainder interest does not pass through Grissom's estate.

{¶ 59} In summary, because the Grandchildren have contingent remainder interests in the Langdon Drive property, we agree with the probate court that they are beneficiaries of the Mary Joan Layne Family Trust. The probate court erred, however, in concluding that the Grandchildren were vested beneficiaries. Accordingly, Edsell's second and third assignments of error are overruled in part and sustained in part.

### VI. Conclusion

{¶ 60} The probate court's judgment will be affirmed in part and reversed in part.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.